IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**TAMI DERRICO**, *on behalf of herself and all others similarly situated,*

   *Plaintiff,*

   v.

**NELNET, INC.**,

   *Defendant.*

**Civil Action No.**

**CLASS ACTION COMPLAINT**

## I.   PRELIMINARY STATEMENT

1. Plaintiff Tami Derrico brings this lawsuit on behalf of herself and federal student loan borrowers like her because of Defendant's widespread violations of section 1681s-2(b) of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x.

2. Defendant Nelnet, Inc., one of the largest federal student loan servicers in the nation, regularly provides information about student loan borrowers' accounts to consumer reporting agencies (singular, "CRA").

3. Nelnet routinely transfers student loans like Plaintiff's to other entities that administer federal student loan forgiveness programs available to eligible borrowers, such as teachers, legal aid attorneys, firefighters, and disabled veterans.

4. As Nelnet knows or should know, eligible federal student loan borrowers such as Plaintiff do, in fact, have their federal student loans completely forgiven.

5. Nevertheless, instead of reporting a $0 balance for these forgiven federal student loans, Nelnet continues to report them to CRAs with an outstanding balance.

6. Later, when borrowers like Plaintiff see their forgiven federal student loans on their credit reports with balances allegedly owing to Nelnet, they often exercise their rights under the FCRA to dispute the erroneous balance information that Nelnet provided.

7. Even upon notice of a dispute through one or more CRAs, pursuant to its standardized FCRA dispute processing procedures, Nelnet routinely and, as a matter of practice, fails to reduce the nonexistent balances to $0 and continues to report the pre-forgiveness balance as open and owing.

8. As a result of Nelnet's conduct, Plaintiff and members of the Class she seeks to represent falsely appear, on their credit reports, to owe the amount of the forgiven student loan debt and suffer injury and damages in the form of harm to credit reputation and credit score, lost credit opportunities, and waste of time and resources, lodging futile disputes and trying to correct Nelnet's false credit reporting.

9. Nelnet's common course of conduct and legal violations entitle Plaintiff and those she seeks to represent to statutory damages, actual damages, punitive damages, and attorneys' fees and costs under the FCRA.

## II.  JURISDICTION & VENUE

10. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

11. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## III.   THE PARTIES

12.   Plaintiff Tami Derrico is a natural person and resident of Westampton, New Jersey.  At all relevant times, she was a "consumer" as defined by FCRA section 1681a(c).

13.   Defendant Nelnet, Inc. ("Nelnet") is a Nebraska corporation that regularly conducts business in the State of New Jersey.  Its principal place of business is in Lincoln, Nebraska.  At all relevant times, Nelnet was a "person" as defined by FCRA section 1681a(b).

## IV.   FACTUAL ALLEGATIONS

*Applicable Legal Framework*

14.   "Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007) (citing 15 U.S.C. § 1681).

15.   FCRA-covered entities must follow procedures in reporting consumer credit information that both "meet[ ] the needs of commerce" and are "fair and equitable to the consumer."  *Saunders v. Branch Banking and Tr. Co. of Virginia*, 526 F.3d 142, 147 (4th Cir. 2008) (quoting 15 U.S.C. § 1681(b)).

16.   In addition to well-known CRAs like Equifax, Experian, Trans Union, and Innovis, the FCRA regulates the conduct of "furnishers of information," entities that provide — or "furnish" — information about consumers to CRAs.

17. If a consumer disputes "the completeness or accuracy of any item of information contained in [his or her] file at a [CRA]," the FCRA requires the CRA to take several affirmative steps. *See* 15 U.S.C. § 1681i(a)(1)(A).

18. Relevant here, the CRA that receives the consumer's dispute must "provide notification of the dispute to [the furnisher] who provided any item of information in dispute" [to the CRA] and "shall include all relevant information regarding the dispute that the [CRA] has received from the consumer[.]" 15 U.S.C. § 1681i(a)(2).

19. After receiving notice of the consumer's dispute from the CRA, a furnisher such as Defendant must "conduct an investigation with respect to the disputed information[,] … review all relevant information provided by [the CRA, and] report the results of the investigation to the [CRA]." 15 U.S.C. § 1681s 2(b)(1)(A)-(C).

20. The FCRA accordingly requires that a furnisher of credit information such as Defendant to "conduct a reasonable investigation of [its] records to determine whether the disputed information can be verified." *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004); *Saunders*, 526 F.3d at 148 (the "FCRA requires furnishers to determine whether the information that they previously reported to a CRA is 'incomplete or inaccurate.'") (citation omitted).

21. If the disputed information "is found to be inaccurate or incomplete or cannot be verified after any reinvestigation," the furnisher must promptly "modify that item of information," "delete that item of information," or "permanently block the reporting of that item of information." 15 U.S.C. § 1681s 2(b)(1)(E)(i)-(iii).

22. Furthermore, "[i]f the completeness or accuracy of any information furnished by any person to any [CRA] is disputed to such person by a consumer, the person may not furnish the information to any [CRA] without notice that such information is disputed by the consumer." 15 U.S.C. § 1681s-2b(a)(3).

23. Circuit courts have repeatedly held that, upon receipt of notice of a dispute through a CRA, a furnisher must correct inaccurate information and minimally mark disputed accounts as "disputed." *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1162-63 (9th Cir. 2009) (citing *Saunders*, 526 F.3d at 150); *see also Seamans v. Temple Univ.*, 744 F.3d 853, 867 (3d Cir. 2014) (a furnisher violates FCRA section 1681s-2(b) "when, having received notice of a consumer's potentially meritorious dispute, [it] subsequently fails to report that the claim is disputed.").

24. The complete and accurate furnishing of information about consumers is important because even small errors can disproportionately influence the cost of certain services, such as mortgages, automobile loans, and credit cards.

25. Relatedly, designating disputed information as "disputed" is similarly important because "when a furnisher responds to a dispute verification form and relates an ongoing dispute, [a CRA] does not include the derogatory information in assessing the credit score." *Saunders*, 526 F.3d at 150.

*Nelnet's Relevant Business Practices*

26. Defendant Nelnet is a student loan servicer for the Department of Education.

27. In the normal course of business, Nelnet maintains detailed business records concerning, *inter alia*, student loan borrowers' account balances and repayment histories ("Student Loan Information").

28. Nelnet routinely furnishes Student Loan Information to CRAs, including Experian, Equifax, and Trans Union, making it a "furnisher of information" as contemplated by the FCRA.

29. Nelnet routinely transfers the servicing of federal student loans to other entities for the purpose of determining borrowers' eligibility for federal student loan forgiveness programs.

*Plaintiff's Experience*

30. In the early 2000s, Plaintiff obtained federal student loans to pursue her graduate school education.

31. As of approximately 2014, Nelnet was the servicer of Plaintiff's federal student loans.

32. A few years later, the student loans were transferred to the Missouri Higher Education Loan Authority ("MOHELA") for servicing.

33. The balance on those loans at that time was over $70,000.

34. After the servicing was transferred, Plaintiff's student loan accounts were closed with Nelnet and the balance on those Nelnet accounts was $0 and should have been reported to the CRAs as $0.

35. In 2023, Plaintiff's federal student loans that were serviced by MOHELA were forgiven pursuant to a federal student loan forgiveness program for long-tenured teachers like her.

36. Once those federal student loans were forgiven, the outstanding balance on those loans was $0. Therefore, Plaintiff did not owe any amount to any entity in connection with the forgiven federal student loans.

37. Later in 2023, Plaintiff discovered that Nelnet was reporting in consumer reports that Plaintiff had "open" federal student loan accounts with total balances of about $70,000 with Nelnet.

38. This was false. Plaintiff did not have any open accounts with Nelnet and did not owe any entity any amount for a student loan.

39. Plaintiff disputed the false Nelnet balances through a CRA, Experian, including on or about February 21, 2024.

40. Pursuant to its independent statutory obligation to notify the furnisher of disputed information upon receipt of a consumer's dispute of that information under FCRA section 1681i(a)(2), Experian provided notice of Plaintiff's disputes to Nelnet.

41. Nevertheless, in response to Plaintiff's disputes on or about March 8, 2024, Nelnet failed to correct or reduce the allegedly outstanding balances to $0 and to fulfill its other obligations under FCRA section 1681s-2(b). Instead, Nelnet continued to report that Plaintiff owed more than $70,000 in federal student loans.

42. As a result of Nelnet's conduct, Plaintiff and members of the Class suffered injury and damages in the form of lost credit opportunities, harm to credit reputation and credit score, and waste of time and resources.

43. Nelnet has long been aware of the problem of duplicative balance reporting and/or non-zero balance reporting after federal student loan forgiveness. Indeed, this problem has garnered the attention of the Department of Education, the Consumer Financial Protection Bureau, and the media. According to recent reporting in the Washington Post,[1] the Department of Education "said it has received about 500 credit reporting complaints since December[.]"

44. At all relevant times, Nelnet acted through its duly authorized agents, and/or employees with respect to the above-alleged conduct.

45. At all relevant times, Nelnet willfully or negligently violated the requirements of FCRA section 1681s-2(b).

## V.   CLASS ALLEGATIONS

46. Plaintiff seeks to represent the following Class:

> For the period beginning two years prior to the filing of the complaint in this matter until the date of the Court's class certification Order, individuals with an address in the United States and its Territories who (1) had federal student loan(s) serviced by Nelnet; (2) which federal student loan(s) were transferred to another servicer and forgiven; and (3) after which forgiveness, Nelnet received notice from a consumer reporting agency of the individual's dispute concerning those forgiven federal student loan(s); but (4) in responding to the consumer

---

[1] Danielle Douglas-Gabriel, *How a paperwork glitch is hurting student loan borrowers' credit scores*, THE WASHINGTON POST, May 29, 2024, *available at* https://www.washingtonpost.com/education/2024/05/29/student-loan-balance-duplicates-credit-reports/.

8

        reporting agency's notice of dispute, Nelnet failed to report a $0 balance for those forgiven federal student loan(s).

47. Plaintiff reserves the right to amend the above definition based upon developments in discovery or as otherwise appropriate and permitted.

48. Members of the Class are so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to Nelnet, Plaintiff avers upon information and belief that they minimally number in the hundreds.

49. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. The principal questions concern whether Class members disputed inaccurate information that Nelnet had furnished to a CRA about them; whether Nelnet failed to correct the disputed information; whether Nelnet failed to instruct the CRA to mark the disputed information as "disputed;" whether Nelnet's conduct was negligent, willful, or reckless; and whether members of the Class are entitled to statutory damages, actual and/or punitive damages, and in what amounts.

50. Plaintiff's claims are typical of the claims of the Class, which all arise from the same operative facts and are based on the same legal theories.

51. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is committed to vigorously litigating this matter. Further, Plaintiff has secured counsel who are experienced in handling FCRA and other consumer class actions. Neither Plaintiff nor her counsel has any interests which might cause them not to vigorously pursue this claim.

52. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Class, as well as a risk of adjudications with respect to individual members which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

53. A class action is a superior method for the fair and efficient adjudication of this controversy. Management of the Class's claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the Class members may be derived from Nelnet's records.

## VI.   CLAIMS FOR RELIEF

### COUNT ONE

**On Behalf of Plaintiff and Members of the Class
for Nelnet's Violation of 15 U.S.C. § 1681s-2(b)**

54. Plaintiff incorporates the foregoing paragraphs as though set forth at length herein.

55. After receiving notice from one or more CRAs of Plaintiff's and Class members' disputes of inaccurate information that Nelnet had previously furnished to the CRA about them, Nelnet negligently or willfully failed to report a $0 balance, correct the inaccurate information, and fulfill all of its duties under FCRA section 1681s-2(b).

56. Nelnet is liable to Plaintiff and members of Class for all relief available pursuant to FCRA sections 1681n and 1681o.

## VII. JURY TRIAL DEMAND

57. Plaintiff demands trial by jury on all issues so triable.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Honorable Court grant her and members of the Class the following relief:

A. certifying the proposed Class under Federal Rule of Civil Procedure 23 and appointing Plaintiff and her counsel to represent them;

B. awarding actual damages pursuant to 15 U.S.C. § 1681n(a) & o(a);

C. awarding statutory damages in the amount of not less than $100 and not more than $1,000 per violation pursuant to 15 U.S.C. § 1681n(a);

D. awarding punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

E. awarding costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and 1681o; and

F. awarding such other and further relief as may be necessary, just, and proper.

Dated:   June 5, 2024                    Respectfully submitted,

                TAMI DERRICO, *individually, and on behalf of all others similarly situated*,

        By: */s/John Soumilas*
           John Soumilas
           Jordan M. Sartell (*pro hac vice* forthcoming)
           FRANCIS MAILMAN SOUMILAS, P.C.
           1600 Market Street, Suite 2510
           Philadelphia, PA 19103
           T: (215) 735-8600
           F: (215) 940-8000
           jsoumilas@consumerlawfirm.com
           jsartell@consumerlawfirm.com

           Jeffrey B. Sand (*pro hac vice* forthcoming)
           WEINER & SAND LLC
           800 Battery Avenue SE, Suite 100
           Atlanta, GA  30339
           T: (404) 205-5029
           T: (404) 254-0842
           F: (866) 800-1482
           js@wsjustice.com

           *Attorneys for Plaintiff*